UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES F. HYMER,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:22-1531 |
| v. | : | (JUDGE MANNION) |
| | : | |
| **DR. TIMOTHY KROSS,** *et al.*, | : | |
| Defendants | | |

## MEMORANDUM

Plaintiff, Charles F. Hymer, an inmate formerly confined in the Benner State Correctional Institution, Bellefonte, Pennsylvania[1], filed the above captioned civil rights action pursuant 42 U.S.C. §1983. (Doc. 1). The named Defendants are Drs. Boland, Kross, and Kollman, Nurse McCormick, Grievance Officer Ardery, Facility Grievance Coordinator Burd and Chief Grievance Officer Varner. Id. Plaintiff complains of a November 9, 2020 incident in which he was removed from the Medication-Assistance Program ("MAT Program") for diverting his medication. Hymer seeks to proceed *in forma pauperis*. (Doc. 2.) The complaint is presently before the Court for preliminary screening pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A to

---

[1] Plaintiff is currently confined in the Chester County Prison, West Chester, Pennsylvania.

determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted or because it seeks monetary relief from a defendant who is immune from suit. For the following reasons, the Plaintiff's complaint will be dismissed for failure to state a claim.

I. **Standards of Review**

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. §1915(e)(2)(B) and §1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." Ball v. Famiglio, 726 F.3d 448, 452 (3d Cir. 2013).

In dismissing claims under §§1915(e)(2) and 1915A, district courts apply the standard governing motions to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, Civ. No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) (stating "[t]he legal standard for dismissing a complaint for failure to state a claim under §1915A(b)(1), §1915(e)(2)(B)(ii), or §1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to §1915A, "a

court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"); Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed.R.Civ.P. 12(b)(6) standard to dismissal for failure to state a claim under §1915(e)(2)(B)).

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. Cty of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to considering the facts alleged on the face of the complaint, the court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Under the pleading regime established by Twombly and

Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' Iqbal, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 679, 129 S.Ct. 1937. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' Iqbal, 556 U.S. at 679, 129 S.Ct. 1937." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (footnote omitted). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Hymer proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

## II. Factual Background

On November 19, 2020, Hymer filed Grievance No. 902736, claiming that he was erroneously removed from the MAT program for allegedly "attempt[ing] to divert Suboxone when it was administered to [him] by medical treatment on 11-9-2020." (Doc. 1 at 9, Official Inmate Grievance).

On January 20, 2021[2] Grievance No. 902736 was denied as follows:

> I am in receipt of your Official Inmate Grievance dated 12/3/2020 in which you report being removed from the MAT program by Dr. Kross for being accused of diverting your medication which you report was not true. You report reading your Inmate Handbook and cannot find any section that pertains to the medical procedure and diverting of medications. You report speaking with Dr. Kross at a video conference with Dr. Kollman present and explained to both of them that you did not divert your medication. You report you were informed that if you had any disagreements with this decision, you could appeal it through the proper channel which is why this grievance was initiated. You also report you followed all the directions given by the nurse to drink water prior to having the medications dumped under your tongue. You gave the medication time to dissolve and took another drink of water as instructed. You then report allowing the nurser to do a mouth check and the nurse told you to take another drink of water and swoosh it around because you still had some medication in your teeth. You report another mouth check by the nurse and were told you were good to go.
>
> After speaking with the medical staff involved and reviewing your medical chart it was noted on 11/9/2020 that Suboxone had been

---

[2] On December 29, 2020, the Facility Grievance Coordinator issued an initial level extension, notifying Hymer that "staff has been authorized to extend the response time by 10 additional working days" as "an extension is necessary in order to appropriately investigate and respond to [Plaintiff's] grievance." (Doc. 1 at 11, Initial Level Extension).

- 5 -

> administered by the medical staff. It was also noted that you appeared very anxious during the administration process. After initiating the mouth check you attempted to leave the area when you were stopped again by medical to recheck your mouth where it was noted that medication had been packed behind your front teeth. It was reported that you immediately shut your mouth. Dr. Kollman was made aware of this incident per his documentation. It was noted on 11/12/20 you were seen by Dr. Kross for a teleconference with Dr. Kollman present and were told that due to the attempted diverting of the medication you were being removed from the program. You were placed on tapering doses of Suboxone and also placed on Clonidine as needed for withdrawal which was administered. Since tapering of medication there has been no adverse reaction reported by yourself or documented by medical staff.
>
> In light of this information, your grievance is denied. Please utilize the sick call process for any medical needs.

(Doc. 1 at 12, Initial Review Response).

On February 1, 2021, Plaintiff filed an appeal to the Facility Manager,

(Doc. 1 at 15),  which was upheld in part and denied, in part, as follow:

> I have reviewed your Official Inmate Grievance, Initial Grievance Response, Grievance Appeal, and facts surrounding your complaint.
>
> In your Grievance Appeal, you state that on November 12, 2020, you were removed from the MAT Program by Dr. Kross. You say that it was explained to Dr. Kross that you tried to supposedly divert, vacate, or remove your Suboxone when it was administered by the medical staff on November 9, 2020. You state that Lt. Berry and Nurse McCormick were present during this treatment line. You were advised by Dr. Kollman and Dr. Kross to appeal the removal from the MAT Program to Superintendent Marsh. You advise that prior to filing a grievance, you wrote numerous Inmate Requests to Staff explaining the situation. You state that you followed the direction that was given

> while the Suboxone was being administered. You further state that you never received a Misconduct Report for this incident, nor was there medication found on you person or in your cell. In addition, there is no DIVAR Video Footage present nor, did your monthly urinalysis testing come back positive. You lastly, wish to address the fact that you did not receive a response to your Initial Grievance in a timely manner.
>
> As previously advised within your Initial Grievance, on November 9, 2020, while staff were administering your Suboxone, you appeared to be anxious during the administration process. While attempting to do mouth checks, it was discovered that you had Suboxone packed behind your front teeth. It should be noted that because you attempted to divert your medication, Dr. Kross and Dr. Kollman removed you from the program.
>
> In investigating the issues in which you claim, it is my decision to uphold in part/deny in part. I am upholding in part based on the fact that your Initial Grievance Response was not provided to you in a timely manner. I am deny (sic) in part based on the fact that you attempted to divert your Suboxone during the administration process. As notated in previous Inmate Requests to Staff, the decision to have you removed from the MAT Program was a medical provider decision and this decision cannot be overridden. Your request for relief is also denied.

(Doc. 1 at 16, Facility Manager's Appeal Response).

On November 5, 2021, Hymer's appeal to final review was denied as follows:

> A review of the record was conducted by the Bureau of Health Care Services regarding your concern of not being provided proper medical care. Your medical record was reviewed, and it was determined that the medical care provided was reasonable and appropriate. The findings of this review concur with the Initial Review Response. These clinical decisions are made by your attending practitioner. You are encouraged to participate in your treatment plan and to discuss your concerns or changes of

condition with a practitioner. No evidence of wrongdoing was identified. Your grievance and requested relief are denied.

(Doc. 1 at 18, Final Appeal Decision).

Plaintiff now files the instant action claiming Defendants "Dr. Timothy Kross, Dr. Kollman, Dr. Boland and Nurse Katherine McCormick acted under color of state and/or local law where they, directly violated Plaintiff's right to proper medical care and failed to protect Plaintiff from consequences which would be reasonably expected to occur as a result of the lack of medical care where they ceased medical treatment for an opiate addiction based on false unsubstantiated accusations which caused Plaintiff to be subjected to physical and mental suffering and relapse that ended in an overdose on April 14, 2021. (Doc. 1). Plaintiff also claims that Defendants "J. Burd, K. Ardery and Doris Varner acted under color of state and/or local law where they directly violated Plaintiff's right to Due Process protected by the Fourteenth Amendment of the United States Constitution where they failed to respond, address, and/or act in a timely manner as required by the Due Process Protection set out in DOC Policy DC-ADM 804, which furthered and/or failed to relieve Plaintiff's pain and suffering of which they were made aware." Id.

For relief, Plaintiff seeks compensatory and punitive damages as well as to be "placed back into treatment/MAT Program." Id.

- 8 -

## III. Legal Standard

Pursuant to the screening provisions of 28 U.S.C. §1915(e)(2), the Court is required to screen *in forma pauperis* complaints prior to service and "shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious [or] (ii) fails to state a claim upon which relief may be granted." 28 U.S.C. §1915(e)(2)(B)(i) and (ii). An action is "frivolous where it lacks an arguable basis in either law or fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Factual allegations are "clearly baseless" if they are "fanciful," "fantastic," or "delusional," Neitzke, 490 U.S. at 328, or where "the facts alleged rise to the level of the irrational or the wholly incredible." Denton v. Hernandez, 504 U.S. 25, 33 (1992). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Id. at 33.

Title 28 U.S.C. §1915's failure to state a claim standard mirrors Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. Rule 12(b)(6). Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief, which contains a short and plain statement of the claim, showing that the pleader

is entitled to relief. The complaint must provide the defendant with fair notice of the claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail. See Phillips v. Cnty. of Allegheny, 515 F. 3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."); Nami v. Fauver, 82 F. 3d 63, 65 (3d Cir. 1996).

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for his claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original and internal citations omitted). The court need not accept unsupported inferences, Cal. Pub. Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, Twombly, 550 U.S. at 556. Legal conclusions without factual support are not entitled to the assumption of truth. See Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009) ("Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a commonsense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 570). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677. Lastly, a *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

IV. <u>Discussion</u>

A. <u>Eighth Amendment Medical Claim</u>

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has


been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical

prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The documentation attached to Plaintiff's complaint clearly demonstrates that Plaintiff received medical attention, and that the attention he received lacks the requisite deliberate indifference to support a Section 1983 claim. Once it was determined that Plaintiff was to be removed from

the MAT program for diverting medication on November 9, 2020, Plaintiff was placed on tapering doses of Suboxone, as well as placed on Clonidine for withdrawal. Plaintiff's own documentation demonstrates that "since tapering of medication there has been no adverse reaction reported by [Plaintiff] or documented by medical staff." (Doc. 1 at 12).

At best, Plaintiff's complaint demonstrates his disagreement with being removed from the program and taken off the Suboxone. Though he may have wished to remain in the program and on Suboxone, his disagreement with the course of action that Defendants took based on the diversion of mediation on November 9, 2020, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989). This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer, 511 U.S. at 837; Rouse, 12 F.3d at 197. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. To the extent that Plaintiff alleges that he had "a relapse that ended in an overdose on April 14, 2021," the Court finds Plaintiff's allegation tenuous, at best, that Plaintiff's November 12, 2020 removal from the MAT Program and medically

monitored tapered removal from Suboxone resulted in an overdose some five months later. Again, the Court finds the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison to remove Plaintiff from the MAT Program.[3]

### B. Fourteenth Amendment Due Process

Plaintiff claims that Defendants J. Burd, K. Ardery and Doris Varner violated his Fourteenth Amendment Due Process protections when they "failed to respond, address and/or act in a timely manner as required by D.O.C. Policy DC-ADM 804." (Doc. 1 at 20).

According to the DC-ADM 804, "[t]he inmate must submit a grievance to the Facility Grievance Coordinator ... within 15 working days after the event upon which the claim is based." See www.cor.pa.gov › Documents › 804 Inmate Grievances. Upon receipt, the Facility Grievance Coordinator

---

[3]A prisoner does not have a constitutional right of access to particular treatment programs. See, e.g., Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) (finding that a prisoner could not state a due process claim either for transfer to a "substantially less agreeable prison" or because he had not been given access to prison rehabilitation programs since "Congress has given federal prison officials full discretion to control the conditions of confinement [citation omitted], and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); Groppi v. Bosco, 208 Fed.Appx. 113, 115 (3d Cir.2006) (finding that a prisoner "does not have a constitutional right to participate in the drug treatment program").

assigns the grievance a tracking number and enters it into the Automated Inmate Grievance Tracking System ("AIGTS"). Id. If the Facility Grievance Coordinator "determines that the grievance is properly submitted according to th[e] procedures manual, the Facility Grievance Coordinator will designate a staff member to serve as the Grievance Officer for that grievance." Id. The Grievance Officer's ruling on the grievance "shall be provided to the inmate within 15 working days from the date the grievance was entered into the [AIGTS]." Id. If "the investigation of the grievance is ongoing," that deadline can be extended by 10 working days upon a request by the Grievance Officer to the Facility Grievance Coordinator. Id. If the Facility Grievance Coordinator grants the Grievance Officer's extension request, the inmate must be notified in writing. Id.

Plaintiff's documentation reveals that Plaintiff initially attempted to resolve his issues informally by submitting two Inmate's Request to Staff Member, one on November 12, 2020 and one on November 18, 2020. (Doc. 1 at 7, 8). When Plaintiff's informal resolutions did not yield a desired result, Plaintiff filed Grievance No. 902736 on December 3, 2020, where it was received by the Facility Grievance Coordinator on December 7, 2020. (Doc. 1 at 9). Although a response should have been provided to Plaintiff within fifteen days of December 7, 2020, or by December 22, 2020, it was not until

December 29, 2020, that the Facility Grievance Coordinator Burd granted the Grievance Officer an enlargement of time of ten additional working days within which to issue a decision. (Doc. 1 at 11). Plaintiff was provided notice of this extension of time. Id. Although the calculation of ten additional working days would have been January 13, 2021, Grievance Officer Ardery's Initial Review Response was not issued until seven days later, on January 20, 2021. (Doc. 1 at 12). On appeal, Facility Manager Marsh recognized this delay in responding and upheld part of Plaintiff's appeal based on the fact that the Initial Grievance Response was not provided in a timely manner. (Doc. 1 at 16).

    To establish a due process violation a plaintiff must show that he was deprived of a liberty interest protected by the Constitution or a statute. Sandin v. Conner, 515 U.S. 472, 479 n.4, 483-84 (1995). Here, the Facility Manager found in Plaintiff's favor that his Initial Review Response was untimely delivered. Moreover, Plaintiff cannot demonstrate any prejudice as a result of the untimely decision as he was not prevented in any way from exercising his rights through the grievance system, or in bringing the instant action. Thus, Plaintiff's alleged due process violation lacks merit.

    Finally, Courts have routinely held that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal

constitutional violation." Flanagan v. Shively, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992). Dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for §1983 liability). Because the claims against Defendants Burd, Ardery and Varner are premised on their respective roles in the grievance process, they are entitled to dismissal.

### V. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, it is clear from the facts alleged in Plaintiff's *pro se* complaint and his attached exhibits that any attempt to amend the Plaintiff's §1983 claims against the named Defendants would be futile. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

## VI. **Conclusion**

Based on the forgoing, the complaint will be dismissed pursuant to 28 U.S.C. §§1915(e)(2)(B)(ii).

A separate Order will be issued.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 28, 2022**
22-1531-01